**IN THE COURT OF APPEALS OF IOWA**

No. 22-1965
Filed February 8, 2023

**IN THE INTEREST OF K.K.,**
**Minor Child,**

**G.K., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.

A father appeals the termination of his parental rights to his child. **AFFIRMED.**

Alexander S. Momany of Howes Law Firm, P.C., Cedar Rapids, for appellant father.

Brenna Bird, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Julie Gunderson Trachta of Linn County Advocate, Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Badding and Buller, JJ.

**BOWER, Chief Judge.**

A father appeals the termination of his parental rights to his child, K.K., asserting the juvenile court minimized his efforts toward reunification and erred in concluding termination was in the child's best interests. He contends the child was removed due to the mother's behavior—not his,[1] and argues the court should have either returned the child to his care immediately or granted him additional time to achieve reunification. In addition, the father contends his bond with the child should have been recognized as an exception to termination. We conclude there is clear and convincing evidence the child cannot be returned to the father's care without risk of adjudicatory harm, termination and adoption are in the child's best interests, and the father did not meet his burden to establish an exception to termination under Iowa Code section 232.116(3) (2022). We thus affirm.

**I. Background Facts and Proceedings.**

The mother's and father's parental rights to two older siblings were terminated on July 16, 2019, due to unresolved substance-abuse, mental-health, and domestic-violence issues. *See In re A.K. and O.S.*, No. 19-1271, 2019 WL 4678262, at *3 (Iowa Ct. App. Sept. 25, 2019) (noting the father "did not complete substance-abuse or mental-health treatment and continued to assault" the mother).

When born in September 2019, K.K.'s umbilical cord tested positive for THC. The department of health and human services (DHHS) began a child-abuse assessment, which resulted in juvenile court proceedings and a finding K.K. was

---

[1] The mother's rights to the child were also terminated; she did not appeal.

a child in need of assistance (CINA) due to substance abuse by the parents, their unstable mental health, and domestic violence. Services to address these issues were offered to the family from October 2019 until September 2020, when the juvenile case was successfully closed.[2]

Unfortunately, on September 11, 2021, DHHS began another child-abuse assessment concerning allegations the mother was using methamphetamine while caring for K.K. and was acting erratically, the father was also using methamphetamine and had assaulted the mother in July, causing her a broken nose, swollen lip, and two black eyes. The final assessment report noted

> concerns are related to drug use and domestic violence. There was a no contact order in place however the mother dropped the order and [K.K.] is back with [the father]. The mother . . . is considering reconciling with [the father] despite no evidence that he has changed his ways. Threats of maltreatment remain high.

The child-abuse assessment was founded against the father for denial of critical care ("[the child] was present in the home and in direct proximity to [the] father when he struck the mother in the face") and founded against both parents for

---

[2] The September 14, 2020 guardian ad litem (GAL) report to the court noted the father had received his medical marijuana card and had assured the GAL he does not smoke or use marijuana around the K.K., and K.K.'s mother denied use of marijuana but tested positive for the substance. The GAL reported:
> [T]here are no indications that either parents' use of marijuana creates safety or neglect issues in the home. The home is always very clean and picked up. There have not been concerns of paraphernalia being accessible to [K.K.] and no reports the home has smelled of marijuana. [K.K.] attends daycare regularly with no concerns reported. [The parents] ensure [the child] attends medical appointments as needed, and those providers do not report concerns. [The father] is able to work on a limited basis which he reports he could not accomplish without his use of marijuana. This case has been open for nearly one year without any safety concerns noted. It does not appear the family is in need of further court oversight.

dangerous substances ("[the mother] acknowledges she used meth with [the father]" in the shed while child was asleep in the home).

K.K. was temporarily removed from parental custody by ex parte order on October 8, 2021.

On October 11, DHHS requested the county attorney file a CINA petition, asserting:

> The ex parte [order] was requested based on [grounds the mother] sought a no contact order in Linn Co. on or around 09/07/20 due to concerns that [the father] was violent towards her in the presence of [K.K.] and that he is using methamphetamine. [The mother] came to Davenport in order to be with family and escape [the father]. She received assistance . . . for housing. [The father] alleged [the mother] was using meth as well. Both parents denied meth use. Neither parent drug tested. [The mother] dropped the no contact order on 09/20/21, returned to Cedar Rapids and is back with [the father]. She was not honest with D[H]HS about this arrangement. There is no way to ensure either parent is sober or that they have addressed concerns of domestic violence.[3]

On October 21, the juvenile court entered an order confirming the child's removal upon finding the "return of the child to his parents would place the child at imminent risk of adjudicatory harm." And, on November 19, K.K. was again adjudicated a CINA. Both parents were ordered to comply with urinalysis or patch drug testing at least four times per month, obtain substance-abuse evaluations and follow all treatment recommendations, and continue attending couples counseling. The juvenile court authorized a trial-home placement.

On January 11, 2022, a dispositional hearing was held, and all present agreed with the recommendation that the child be placed in foster care.[4] The court

---

[3] On October 14, both parents tested positive for marijuana.
[4] The father and mother were represented by counsel. The parents did not attend the hearing.

placed the child in DHHS's custody, continued the trial home placement unless terminated by DHHS, and again ordered both parents to obtain a substance-abuse evaluation and follow all treatment recommendations, cooperate with at least four drug tests per month,[5] and participate in counseling deemed appropriate.

At a January 12 supervised visit, the mother reported to the service provider that earlier in the day the father had hurt her and broken the vacuum. The father came into the room holding K.K. and yelled at the mother to get out of the house and at the worker to "get [her] out." The FSS worker noted he was "yelling quite loud and becoming agitated." The mother called police, who responded, but left after speaking with the parents and determining "the current situation did not call for emergency removal of the child."

On January 13, the father was arrested for domestic abuse assault with injury to the mother. A police officer reported to DHHS that law enforcement had been called to the home numerous times "over the last several months due to both parents and were extremely concerned for the child." The trial home placement was ended, and the child was placed in family foster care.

A February 3 progress report noted the parents had yet to attend drug testing. A no-contact order was in effect. A March 3 progress report noted neither parent had completed a substance-abuse evaluation or attended a drug test.

A March 15 review hearing was held. The court ordered custody of the child remain with DHHS for purposes of continued family foster care, found reasonable

---

[5] They had yet to test.

efforts to reunify the family were being made, and no additional services were requested. The juvenile court also ordered the following:

–the father was to obtain a copy of his substance-abuse evaluation and provide a copy to the court, obtain a mental-health evaluation and follow all treatment recommendations.

–the mother was to obtain a substance-abuse evaluation, mental-health services, and domestic-violence services.

–the mother and father were to cooperate with drug testing, either urinalysis or patch testing, at a minimum of four times per month.

–the father and the mother were to abide by the terms and conditions of the no contact order for as long as it is in effect, "focus on themselves and not what the other person is or is not doing," and participate consistently and separately in visitation with K.K.

The mother had filed a petition for relief from domestic abuse in February, and on April 18, a district court found the father had assaulted the mother in June 2021, October 2021, and January 2022. The court specifically found the father's testimony not credible and stated it appeared he "engages in manipulation, lying, and misremembering." A permanent domestic-abuse protective order was entered.[6]

The Foster Care Review Board's June 21 report noted the father had not completed any drug testing, had not provided proof he had obtained a court-ordered substance-abuse evaluation, and was not participating in any mental-health services, though he "would benefit from having open and honest dialogue with a therapist about issues that cause him distress. Through the work with a

---

[6] The permanent protective order was lifted in June 2022, at which time the parents resumed interactions.

therapist he could identify and understand how his stressors are impacting his life, plus develop strategies to manage any symptoms he is experiencing."

The GAL provided a report to the juvenile court in advance of the June 28 permanency hearing and recommended the filing of a petition to terminate parental rights. After the permanency hearing, the juvenile court ordered the filing of a petition to terminate parental rights.

In August, the father provided the court a substance-abuse evaluation that listed February 4, 2022, as the date of service. The evaluation contains a number of statements attributed to the father that indicate he was not particularly forthcoming with the evaluator. For example, the father told the evaluator K.K. was removed due to the mother's conduct and "not a result of his actions." He also reported he was completing four urinalysis tests a month and was compliant with all DHHS requirements. The evaluator recommended no substance-abuse treatment based on the father's own analysis and his reported substance use.

The father also provided to the juvenile court a mental status evaluation that had been conducted via tele-health for purposes of a disability determination in April 2021—more than a year earlier. The evaluator's summary and impressions include the following:

> [Tthe father] identifies a number of medical problems and chronic pain as his primary disability. He said ADHD has been a lifelong condition that continues to adversely affect his focus and concentration. [He] identified other behavior patterns, including lack of ability to self-regulate his emotions and self-restraint, which are often associated with ADHD as well. He identified an agitated type of depression and anxiety; he attributes this to chronic pain, a sense of being treated unfairly throughout his life, and the loss of his children in recent years. [He] reports these problems at times interfere with his ability to sleep and that he will stay up for a couple of days at a time. There can be some overlap between behavior

patterns and symptoms associated with ADHD and Bipolar Disorder. At the present time, Bipolar Disorder does not appear to be an accurate diagnosis, however, it is being retained as a rule out, since this could not be conclusively determined during the current evaluation. The diagnosis of Unspecified Depressive Disorder is being utilized. [The father] appears capable of remembering and understanding instructions and procedures. He seems to have some difficulty in maintaining concentration; this will be a problem as demands increase. This seems to stem from ADHD. [The father] was cooperative throughout the evaluation. He acknowledges typically being angry and non-trusting of others. [He] has a history of interpersonal conflict and will likely have trouble interacting appropriately with peers and supervisors. His ability to adapt to changes in the workplace will depend on his familiarity with these responsibilities. He insists that most of the type of work he is qualified for requires physical demands that he can no longer meet. [His] anger, his difficulty regulating his emotions, and impulsivity will also create complications in this area. It was suggested to [the father] that he may benefit from pursuing therapy. He made it clear that he has no interest in pursuing any further psychotropic medication, since his bad experience years ago.

Laura Palumbo, the social worker case manager, provided the court with a letter update in advance of a scheduled August 17 review hearing. Palumbo noted the father continued to struggle with managing his emotions and will swear and yell at the service provider in the child's presence. She also noted the parents continued to have a "toxic relationship" and had not followed through with counseling. Palumbo wrote the mother had recently called the police because the father was destroying things in her apartment; the father had been arrested on July 5 for theft, criminal mischief, and disorderly conduct; and neither parent had participated in court-ordered drug testing.

The juvenile court issued a permanency review order on August 17 following the hearing. It continued its previous order that the parents participate in drug testing four times per month. It also ordered the father to obtain a new

substance-abuse evaluation and obtain a mental-health evaluation and follow all treatment recommendations.

On September 7, the mother obtained a temporary domestic-abuse protective order against the father; it was dismissed on September 20 at the mother's request. The father obtained a temporary domestic-abuse protective order on October 4, which the court dismissed after a hearing on its finding the father had not met his burden of proof.

The father finally had a sweat patch applied on October 16, 2022. The results of that drug test were not provided to the court at the time of the November 7 termination trial.

The child's GAL filed a report to the court on November 4, which reads in part

> [K.K.] continues to do well with a stable routine and is a good sleeper. He loves to give hugs and is observed to be very comfortable in the foster home and around his foster parents. . . . [K.K.] has been observed to have difficulty expressing his fears and feelings. He can become [] prone to tantrums and acting out aggressively when he is frustrated. He is also likely not to react to other stimuli such as yelling by his parents whether directed at each other or professionals. He is too young to communicate his feelings and too young to understand and process his conflicting emotions. The foster parents are very supportive of [the child] and enjoy having him in their home. The foster parents have been communicative with the parents and supportive of the reunification goal and want what is best for [K.K.] They are willing to be considered a potential permanent placement for [K.K.] if reunification cannot occur.
>
> The case progress report notes the parents['] struggles to engage effectively in case plan services. Concerns remain regarding the parents' honesty about their current situation, their relationship, the level of domestic violence, substance use, their employment, housing, and willingness to address the safety concerns that resulted in [K.K.'s] removal from their care. [K.K.] is a very young child. From his reactions, and at times his lack of reaction, it is clear that this child has been exposed to significant trauma in his life. The parents have

been less consistent in attending their interactions during this review period.  Both parents remain on fully supervised interactions.

The GAL recommended termination of parental rights and adoption.

Both parents met with their respective attorneys before the November 7 termination hearing, but neither attended the trial.  The only testimony presented was by Palumbo, who testified she started working with the family on October 28, 2021, and had reviewed the prior CINA case file and communicated with the prior case manager; the issues remained the same.  Palumbo testified she had reviewed two prior family assessments and six child-abuse assessments and concluded that after more than four years of DHHS services, there was little to no change or improvement in the father's ability to safely parent a child.  She recommended termination of parental rights.

On November 15, the juvenile court issued its ruling terminating the father's parental rights pursuant to pursuant to Iowa Code sections 232.116(1)(g) and (h).[7]

---

[7] Under those paragraphs, a court may terminate parental rights if:
> g. The court finds that all of the following have occurred:
> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family or a court of competent jurisdiction in another state has entered an order involuntarily terminating parental rights with respect to another child who is a member of the same family.
> (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.
> (4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.
> h. The court finds that all of the following have occurred:
> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

The court noted Palumbo reported there were over forty calls for service for law enforcement to the father's residence from January 1 to November 7, 2022.

> Ms. Palumbo testified that [K.K.] could not be returned to either parent at the time of trial without being a child in need of assistance. Further, considering the length of time that the parents have been provided services of the various child in need of assistance cases . . . . two with [K.K.]—additional time would not likely result in the issues being adequately addressed to allow him to return to a parent within a reasonable amount of time.

The father's appeal, while listing only one issue—the court erred in finding no exception was applicable—also asserts the court "fail[ed] to give [the father] due credit for his accomplishments and . . . inaccurately fault[ed] him for 'not participating' in his substance abuse recommendation." He asserts the court should not have ruled on the termination petition before the results of the father's October patch test were available and argues Palumbo's testimony shows the actual concern was with the "mercurial and potentially violent nature" of the parents' relationship. He argues that, because the mother's rights were terminated, the court could have returned the child to the father or given him an additional six months to achieve reunification. In addition, he contends the "evidence failed to establish sufficient ground for termination as well as unequivocally established that the termination of [his] parental rights would be detrimental to the child."

---

> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

**II. Scope or Review and Analysis.**

We review termination-of-parental-rights proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We (1) "determine if a ground for termination exists under [Iowa Code] section 232.116(1)"; (2) consider the best-interests factors under section 232.116(2); and (3) "decide if any exceptions to termination exist under section 232.116(3)." *Id.* at 40–41. The father disputes the finding the child could not be returned to him at the time of the termination hearing.

The father's characterization of the circumstances of this child's removal from parental custody minimizes his anger issues, domestic violence, and lack of cooperation with the juvenile court's orders and expectations. He wants credit for participating in a substance-abuse evaluation, which he did not make available to the juvenile court until after the petition to terminate his rights was ordered. Moreover, a review of that evaluation discloses the father inaccurately reported he was participating in drug-testing four times per month when the record shows he did not test until October 2022. So his claim that he complied with the court-ordered substance-abuse evaluation has little weight.

He also points out he obtained a mental-health evaluation—but the "mental status" evaluation he obtained for other purposes was not provided to the juvenile court until after the termination petition was filed. That evaluation noted the father's anger issues and stated he could "benefit from pursuing therapy." He did not do so throughout the course of the juvenile proceedings. The record also indicates the father was physically violent with the child's mother and with neighbors, and he could not or did not have the ability to control his anger even in the child's presence.

There is clear and convincing evidence the child could not be returned to him at the time of the termination hearing, supporting termination under both section 233.116(1)(g) and (h). A court may only grant an extension of time if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). The father has had more than four years of involvement with services, an additional period is not warranted.

For the second-step of our analysis, we consider "the child's safety, . . . the best placement for furthering the long-term nurturing and growth of the child, and . . . the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41.

We adopt the juvnenile court's findings here:

> [The parents] have been involved with Child Welfare Services for a number of years. They have had their parental rights terminated to two older children. They each have another child, in addition, which is not in their custody. The issues present in the current case have remained constant throughout their involvement with DHHS with no apparent improvement. [K.K.] is very young but it is evident that he has been involved in so much chaos and violence that he no longer shows any emotional response when his parents' emotions are heightened and they engage in yelling and screaming at each other or the providers. His behaviors have improved markedly with the structure, calmness, and routine found in his foster home. He deserves permanency in a calm, stable, violence-free, substance-free home.

Termination and adoption will best provide K.K. with the opportunity to find permanency.

"[T]he last step of our analysis is to determine whether any exceptions in section 232.116(3) apply to preclude the termination." *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016). The father relies on his bond with the child. Section 232.116(3)(c) allows the court not to terminate where the parent establishes "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (stating the parent bears the burden to prove the permissive exception). The providers who supervised visits did note the father had a bond with K.K., but there is not clear and convincing evidence termination would be detrimental to the child.

Because grounds for termination exist, termination is in the child's best interests, and the father has failed to prove the parent-child bond weighs against the termination of his parental rights, we affirm.

**AFFIRMED.**